FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 07, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ISAAC C., | NO: 2:19-CV-00074-RHW |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 11, 12. This matter was submitted for consideration without oral argument. The Plaintiff is represented by Attorney David L. Lybbert. The Defendant is represented by Special Assistant United States Attorney L. Jamala Edwards. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 12, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 11.

ORDER ~ 1

**JURISDICTION**

Plaintiff Isaac C.[1] protectively filed for supplemental security income on February 11, 2013, alleging an onset date of November 1, 2008. Tr. 92-102. At the hearing, the alleged onset date was amended to February 11, 2013. Tr. 414. Benefits were denied initially, Tr. 45-52, and upon reconsideration, Tr. 54-56. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on August 28, 2017. Tr. 409-44. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 12-29, and the Appeals Council denied review. Tr. 6-9. The matter is now before this court pursuant to 42 U.S.C. § 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 24 years old at the time of the hearing. Tr. 415. He graduated from high school and took a few classes at community college. Tr. 415, 429. Plaintiff lives with his wife and one and a half-year-old son. Tr. 416. He has work

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial.

ORDER ~ 2

history as a produce sorter, stock clerk, teacher aide, child monitor, music teacher, and security guard. Tr. 427-28, 437. Plaintiff testified that he could not work because he could not keep up with production requirements, he could not stand on his feet, and he missed work because of increased pain in his feet. Tr. 427-29.

Plaintiff testified that he uses heat pads for three hours a day, uses ice on his feet once a day, and elevates his feet every day. Tr. 430-31. He reported that when he starts walking it is very painful for five or ten minutes, then the pain "eases up," but then the leg pain gets worse and "lingers" for hours after the "exercise" is done. Tr. 432. He gets tension headaches and migraines if he "exerts himself" by walking. Tr. 431-32. Plaintiff has problems using his hands, cannot handle small objects, drops things, has pain if he has to grasp things for longer than a couple of minutes, has a painful burning sensation in his hands and arms if he tries to play guitar, and cannot button his clothing. Tr. 424, 432-34. He testified that he can sit for a half an hour before he has to switch positions, standing makes his feet hurt quickly, he has "terrible sleep," and he would have to miss at least two days per week of work because his symptoms are so bad. Tr. 433-35.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 11, 2013, the date the application was filed. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: peripheral neuropathy, chemically induced; somatoform disorder; personality disorder; mild neurocognitive disorder; plantar fasciitis; Achilles tendonitis; post-traumatic stress disorder (PTSD); and depression. Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments

that meets or medically equals the severity of a listed impairment.  Tr. 18.  The

ALJ then found that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 416.967(a) except he can
> occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds;
> occasionally balance; engage in unlimited stooping, kneeling, crouching, and
> crawling; and frequently handle and finger, bilaterally.  In addition, the
> claimant can understand, remember, and carry-out simple, routine tasks,
> where such tasks are predetermined by the employer; is able to have
> occasional, brief, and superficial contact with the general public and co-
> workers; and can adapt to routine changes in the workplace setting.

Tr. 20-21.  At step four, the ALJ found that Plaintiff is unable to perform any past

relevant work.  Tr. 27.  At step five, the ALJ found that considering Plaintiff's age,

education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, including: escort

vehicle, document preparer, and stuffer, toys.  Tr. 27-28.  On that basis, the ALJ

concluded that Plaintiff has not been under a disability, as defined in the Social

Security Act, since February 11, 2013, the date the application was filed.  Tr. 28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her supplemental security income benefits under Title XVI of the Social Security

Act.  ECF No. 11.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ erred at step two;

2.  Whether the ALJ properly considered Plaintiff's symptom claims;

3.  Whether the ALJ properly weighed the medical opinion evidence; and

4.  Whether the ALJ erred at step five.

ORDER ~ 8

# DISCUSSION

## A. Step Two

At step two, a claimant must first establish that he or she suffers from a medically determinable impairment. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004-1005 (9th Cir. 2005). An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.908. Thus, to be medically determinable, a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings. *Id.* A claimant's statement of symptoms alone is not enough to establish a physical or mental impairment. 20 C.F.R. § 404.1508, 404.1528(a). Rather, evidence from an acceptable medical source is required to establish the existence of a medically determinable severe impairment. 20 C.F.R. § 404.1513(a).

Here, the ALJ resolved step two in Plaintiff's favor, finding Plaintiff has the following severe impairments: peripheral neuropathy, chemically induced; somatoform disorder; personality disorder; mild neurocognitive disorder; plantar fasciitis; Achilles tendonitis; post-traumatic stress disorder (PTSD); and

depression.[2]  Tr. 17.  Despite this finding, Plaintiff argues the ALJ erred by finding

Plaintiff's claimed impairment of fibromyalgia was not medically determinable.

ECF No. 11 at 15-17.  In making this finding, the ALJ specifically considered SSR

12-2p, which sets forth the criteria by which a claimant may be found to have a

medically determinable impairment of fibromyalgia.  Tr. 18.  As an initial matter,

Plaintiff must provide evidence that a licensed physician reviewed his medical

history, conducted a physical examination, and made a fibromyalgia diagnosis.

SSR 12-2p, *available at* 2012 WL 3104869 at *2.  The physician must also provide

evidence which satisfies one of two alternate diagnostic criteria: the 1990

American College of Rheumatology Criteria for the Classification of Fibromyalgia

("1990 Criteria"), or the 2010 American College of Rheumatology Preliminary

Diagnostic Criteria ("2010 Criteria").  *Id.* at *2-3.  Under the 1990 criteria, the

evidence must show: (1) "a history of widespread pain ... that has persisted ... for at

least 3 months;" (2) at least 11 positive tender points, found both bilaterally and

above and below the waist; and (3) evidence that other disorders which could cause

---

[2] Plaintiff generally states, without further argument or citation to legal authority,

that the ALJ's "failure to include [Plaintiff's] chronic and debilitating headaches as

a severe impairment is also reversible error."  ECF No. 11 at 8.  The Court declines

to address this issue as it was not raised with requisite specificity in Plaintiff's

opening brief.  *See Carmickle*, 533 F.3d at 1161 n.2.

ORDER ~ 10

the symptoms were excluded. *Id.* at *3. Under the 2010 Criteria, the evidence

must show: (1) a history of widespread pain; (2) repeated manifestations of six or

more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence

that other disorders which could cause the symptoms were excluded. *Id.* Finally,

the physician's diagnosis must not be "inconsistent with the other evidence in the

person's case record." *Id.* at *2.

Here, the ALJ found that the record "lacks a specific finding of tender

points." Tr. 18. Specifically, the ALJ noted several examinations that diagnosed

chronic pain syndrome and polyarthralgia, respectively, and did not document any

specific tender points or quadrant findings. Tr. 18 (citing Tr. 208, 218-22).

Further,

> [a] nurse practitioner noted trigger pains consistent with fibromyalgia, but did not specify the exact number or location of the such points, or the criteria she used in making the diagnosis. Rather, she gave vague descriptions that they were in multiple areas of the arms, chest, legs, and back. Furthermore, the nurse did not clearly exclude other causes of [Plaintiff's] pain, especially in light of his multiple other conditions, which must be done before a diagnosis of fibromyalgia can be diagnosed.

Tr. 18 (citing Tr. 284-87). Plaintiff argues the 2010 criteria has been met because

the 2017 letter from Brett Greenburg, PAC and Morgan Fife, M.D. states that

Plaintiff has been treated for chronic myalgia and arthralgia, anxiety and

depression, and irritable bowel syndrome; and "they believe he has [f]ibromyalgia

based upon these factors and that he has shown corresponding tender points in the

upper back, arms, mid back, low back, and buttocks."  ECF No. 11 at 16 (citing Tr. 384-85).

However, as discussed below, this opinion was properly discounted by the ALJ because it was vague, unexplained, and inconsistent with the overall medical record.  *See* Tr. 25.  Moreover, Plaintiff is correct that "a person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017).  Normal objective examination results can be "perfectly consistent with debilitating fibromyalgia." *Id.* at 666.  However, the "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability."  *Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Finally, as noted by the ALJ, without specific documentation of the location of Plaintiff's tender points, and specific evidence of exclusion of other causes of Plaintiff's pain, especially in light of his additional diagnosed conditions of polyarthralgia and chronic pain syndrome, Plaintiff cannot meet the 1990 or the 2010 criteria for fibromyalgia.  *See* SSR 12-2p.

Based on the foregoing, the Court finds the ALJ's step two analysis that fibromyalgia was not a medically determinable impairment was supported by substantial evidence.  Additionally, the ALJ specifically noted that regardless of this finding, she "considered all of [Plaintiff's] allegations regardless of diagnoses in reaching this decision," and Plaintiff makes no showing that fibromyalgia

ORDER ~ 12

created limitations not already accounted for in the RFC.[3]  Tr. 18; *See Shinseki*,

556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of

showing harm).  Therefore, even were the Court to find that the ALJ improperly

considered fibromyalgia at step two, any error would be harmless because the ALJ

specifically found any that any limitations resulting from these claimed

impairments were properly accounted for in the assessed RFC.  *See Lewis v.*

*Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's failure to list

plaintiff's bursitis as a severe impairment at step two was harmless where ALJ

considered limitations caused by the condition at step four); *see also Molina*, 674

---

[3] Plaintiff argues, without citation to legal authority, that "to confirm the

[fibromyalgia] diagnosis, the adjudicator is admonished to contact the treating

source for additional information."  ECF No. 13 at 5.  However, "[a]n ALJ's duty

to develop the record is triggered only when there is ambiguous evidence or when

the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v.*

*Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Moreover, while the ALJ may

have a duty to develop the record in certain cases, it is Plaintiff's burden to

produce evidence to establish disability.  20 C.F.R. § 404.1512(a).  Here, the Court

is unable to discern any inadequacy or ambiguity that did not allow for proper

evaluation of the record as a whole.  *See Bayliss*, 427 F.3d at 1217.

ORDER ~ 13

F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination).

### B. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude

ORDER ~ 14

that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 21.

### 1. Lack of Objective Medical Evidence

First, the ALJ found that Plaintiff's statements about his symptoms are inconsistent with the physical and mental examinations findings. Tr. 22-23. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ set out the medical evidence contradicting Plaintiff's claims of disabling limitations. As to his claimed physical impairments, the ALJ cited

ORDER ~ 15

2013 examination findings of symmetric, normal gait; 5/5 muscle strength; normal

sensory examination; ability to squat and rise with ease; ability to rise from sitting

position without assistance; normal tandem walking; and normal walking on his

heels and toes. Tr. 22 (citing Tr. 218-22). The ALJ acknowledged that in the few

treatment notes in 2013 and 2014, Plaintiff complained of fatigue, sleep

disturbances, pain in his arms and legs, and "aching, burning, shooting, throbbing,

and tingling" pain in the soles of his feet. Tr. 22, 238-39, 246-47. However, these

same records indicate his foot strength was 5/5, he exhibited no edema or

tenderness, his gait was normal, he had no cervical adenopathy, and the it is

unclear whether Plaintiff followed up with prescribed medication and physical

therapy referral. Tr. 22, 234, 238, 244, 247. In addition, the ALJ noted that

Plaintiff's gait "was mostly normal until very recently," he "felt better after going

on a short walk" in 2015, his gait was still normal in September 2015, his gait was

slow but only mildly antalgic in 2016 and 2017, and he "rarely appeared at any

appointment with a non-prescribed assistive device." Tr. 22 (citing Tr. 243, 284,

290, 312, 360, 393). Finally, as to his upper extremities, the ALJ noted that there

was a gap in treatment for about one year, and "when he returned for treatment in

June 2015," examination findings indicated diminished sensation to light touch and

positive Tinel's and Phalen's signs at his bilateral wrists. Tr. 23, 280. However,

the ALJ specifically found that these were "some of the only abnormal

examination findings in the filed respect to [Plaintiff's] hands," and there were

ORDER ~ 16

"minimal abnormal findings related to [Plaintiff's] hands overall in the record." Tr. 23; *see Burch*, 400 F.3d at 680 (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor).

Next, as to his claimed mental impairments, the ALJ acknowledged that Plaintiff endorsed depression and anxiety during the relevant adjudicatory period, and was diagnosed with major depressive disorder and unspecified somatic symptom disorder. Tr. 23-24, 207, 210, 229. However, the ALJ cited objective evidence indicating that Plaintiff was friendly; cooperative; logical; progressive; oriented; able to count by serial threes; had euthymic affect; was able to follow three-step instructions; and had appropriate mood. Tr. 23, 208, 212, 231-33, 264, 269-70. Moreover, the ALJ found that Plaintiff's "mental examinations generally remained normal throughout the period under consideration," including several 2013 mental status examinations were almost entirely normal with only some deficits in delayed memory testing and fund of knowledge. Tr. 23.

Plaintiff largely argues that the ALJ erred in "disregarding the effect of" Plaintiff's claimed impairment of fibromyalgia. ECF No. 11 at 15-17. However, as discussed above, the ALJ properly determined that fibromyalgia was not a medically determinable impairment, and nonetheless considered all of Plaintiff's claimed impairments. In addition, Plaintiff generally argues that the ALJ "goes to great lengths to try to substantiate a lack of objective findings so as to allow him to

ignore the claimant's description of limitations, as well as the limitations repeatedly provided by his treating medical sources." ECF No. 11 at 8. In support of this argument, Plaintiff generally cites the statement by Mr. Greenberg, PAC and Dr. Fife, and contends that "[t]he ALJ must adhere to these opinions or provide clear and convincing reasons for not adopting the limitations." ECF No. 11 at 8. However, as discussed below, the ALJ properly rejected the cited opinion because it was inconsistent with the overall record and unsupported by clinical findings. Tr. 25. Moreover, regardless of evidence that could be considered favorable to Plaintiff, it was reasonable for the ALJ to find the severity of Plaintiff's symptom claims was inconsistent with medical evidence. *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation). This lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

### 2. *Daily Activities*

Second, the ALJ identified daily activities that are "inconsistent with the level of pain and impairment [Plaintiff] described at the hearing." Tr. 22. As noted by Plaintiff, a claimant need not be utterly incapacitated in order to be eligible for benefits. ECF No. 11 at 17 (citing *Fair*, 885 F.2d at 603); *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities

ORDER ~ 18

. . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

In support of this finding, the ALJ's decision includes evidence of Plaintiff's ability to do household chores like make the bed, lift a bag of dog food, take classes at community college, handle his finances, read for an hour a day, and play video games for an hour a day. Tr. 19-22 (citing Tr. 165-67, 206, 231, 266, 418-23, 429). The ALJ additionally found that "[i]n his activities of daily living, [Plaintiff] has been able to care for his infant son, on his own, which requires the ability to not only multi-task, but to also be able to adapt to quickly changing environments." Tr. 23; *Rollins*, 261 F.3d at 856-57 (the ability to care for a young child without help has been considered an activity that may undermine claims of totally disabling pain).

Plaintiff generally argues that "none of these examples given by the ALJ show that the Plaintiff can maintain employment on a regular and continuing basis." ECF No. 11 at 17. However, the Court finds it was reasonable for the ALJ to conclude that Plaintiff's documented daily activities, including caring for his young child and managing household chores, was inconsistent with his allegations of incapacitating limitations. Tr. 28; *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that

they contradict claims of a totally debilitating impairment); *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).  This was a clear and convincing reason to discredit Plaintiff's symptom claims

### 3. *Additional Assignments of Error*

The Court notes that Plaintiff fails to challenge several additional reasons given by the ALJ to discount Plaintiff's symptom claims.   The Court may decline to address these reasons because Plaintiff does not identify or challenge them in his opening brief.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  First, the ALJ specifically noted that Plaintiff "did not appear to maximize his recommended treatments.  For example, there is no documentation in the record that he participated in [recommended] physical therapy."  Tr. 22, 247 (prescribing physical therapy and stretching exercises).  Similarly, Plaintiff "was not compliant with all his mental health treatment recommendations or delayed follow-up" throughout the relevant adjudicatory period.  Tr. 23-24, 239 (advising him to consider mental health medication in 2014), 287 (encouraging him again to start counseling and mental health medication in 2015), 309 (reporting "occasional struggles with depression" in 2016), 363 (discontinued sleep medication despite reporting that it did help him sleep), 402 (Plaintiff reports he doesn't "think he needs to continue with therapy").  The ALJ may rely on unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of

treatment as a basis for discounting Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Second, the ALJ noted "secondary gain issues" in that Plaintiff reported that some of his prior jobs ended for reasons unrelated to his conditions or symptoms. Tr. 24. Specifically, Plaintiff reported that (1) his job at an after school program ended because there were not enough children enrolled in the program; (2) he reported in 2013 that he was offered a job in another after school program, but he "couldn't do it because [he was] in the process of applying for Social Security"; and (3) he reported in 2016 that he was "disappointed that he was sometimes unable to do a job because it would disqualify him from his disability benefits." Tr. 24 (citing Tr. 230, 309). The ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition when weighing the Plaintiff's symptom reports. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001); see also *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (evidence of being motivated by secondary gain is sufficient to support an ALJ's rejection of Plaintiff's symptom claims). It was reasonable for the ALJ to discount Plaintiff's symptom claims for these reasons.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**C. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is generally given more weight than that of an "other source." *See*

ORDER ~ 22

SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources.  20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ need only provide "germane reasons" for disregarding an "other source" opinion.  *Molina*, 674 F.3d at 1111.  However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the opinions of treating providers Brett Greenburg, PAC and Morgan Fife, M.D., examining psychologists John Arnold, Ph.D. and Thomas Genthe, Ph.D., and examining provider Brooke Sjostrem, MS, LMHC.  ECF No. 11 at 12-14, 19-20.

### 1.  Brett Greenburg, PAC and Morgan Fife, M.D.

In July 2017, Mr. Greenburg and Dr. Fife submitted a "summary statement" opining that Plaintiff has reduced focus and concentration and "this is worse when dealing with pain"; his pain levels would cause him to miss at least three days of work per month; he can stand and walk a maximum of 2 hours per day; he has diminished sensation in his fingers and "would likely have difficulty with fine work such as assembly or sorting, and probably would not be able to perform such at production levels of activity"; and he would not be able to perform repetitive unskilled work "on a 8 eight hour day basis, or regularly perform 40 hours per

week." Tr. 384-85. The ALJ gave this opinion little weight for several reasons. Tr. 25.

First, the ALJ found the providers did not explain how they arrived at these findings and did not include clinical mental status evaluation findings to support their description. Tr. 25. The Court may decline to address this reasoning because Plaintiff fails to identify or challenge this reason in his opening brief. *See Carmickle*, 533 F.3d at 1161 n.2. Regardless, relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). As noted elsewhere in the decision, the ALJ found Plaintiff's mental status evaluations were largely normal, including Mr. Greenburg's own objective findings throughout the relevant adjudicatory period that Plaintiff had no depression, anxiety, or agitation. *See* Tr. 23, 313, 360, 365, 370, 373. Thus, the lack of support offered by Mr. Greenburg and Dr. Fife in

ORDER ~ 24

support of their opined limitations was a specific, legitimate, and unchallenged reason for the ALJ to reject their opinion.

Second, the ALJ noted that Mr. Greenburg and Dr. Fife "opined that [Plaintiff] would likely have difficulty with fine manipulation work at production levels, but they did not describe with specificity the level or degree of 'difficulty.'" Tr. 25. Again, the Court may decline to address this finding as it was not raised with specificity in Plaintiff's opening brief. *See Carmickle*, 533 F.3d at 1161 n.2. Moreover, the ALJ is not required to incorporate limitations phrased equivocally into the assessed RFC. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009); *see also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where a physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions."). It was reasonable for the ALJ to give little weight to the providers' vague assessment that Plaintiff would likely have difficulty with fine manipulation at work pace production, because they did not "describe with specificity the level or degree of difficulty." Tr. 25. This was a specific, legitimate, and unchallenged reason for the ALJ to discount Mr. Greenburg and Dr. Fife's opined limitation.

Finally, the ALJ found that "[o]verall, this letter is inconsistent with the medical evidence." Tr. 25. Plaintiff generally argues, without citation to the

record, that "[b]oth the physical medicine records and the psychological evaluations of [Plaintiff] support the limitations described by the treating sources." ECF No. 11 at 14.  However, the consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion.  *Orn*, 495 F.3d at 631.  In support of this finding, the ALJ cites evidence of "infrequent abnormal findings and only a mildly antalgic gait."  Tr. 25, 218-22, 234, 238, 243-44, 247, 284, 290, 312, 360, 393.  Thus, regardless of evidence that might be considered more favorable to Plaintiff, it was reasonable for the ALJ to find that the overall the severity of the limitations assessed by Mr. Greenburg and Dr. Fife was inconsistent with the longitudinal medical evidence.  *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

For all of these reasons, the Court finds the ALJ did not err in considering Mr. Greenburg and Dr. Fife's opinion.

### 2.  *John Arnold, Ph.D. and Thomas Genthe, Ph.D.*

In February 2013, Dr. Arnold examined Plaintiff and opined that he had marked limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; adapt to changes in a routine work setting; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from

ORDER ~ 26

psychologically based symptoms.  Tr. 209-212.  The ALJ gave little weight to Dr.

Arnold's opinion because (1) it does not include a narrative functional medical

source statement, and therefore lacks proper explanation and support; and (2) the

moderate to marked ratings are inconsistent with Plaintiff's normal mental status

evaluation which include findings of cooperative and congenial attitude, and

progressive/logical speech.  Tr. 26.

In December 2014, Dr. Thomas Genthe examined Plaintiff and opined that

he had marked limitations in his ability to maintain appropriate behavior in a work

setting, and set realistic goals and plan independently.  Dr. Genthe additionally

opined that Plaintiff had moderate limitations in his ability to understand,

remember, and persist in tasks by following detailed instructions; perform

activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances without special supervision; adapt to changes in a routine

work setting; and complete a normal work day and work week without

interruptions from psychologically based symptoms.  Tr. 265-77.  The ALJ gave

little weight to Dr. Genthe's 2014 evaluation because (1) "it was time limited

evaluation for only six months, so it does not meet the durational requirement"; (2)

the "narrative summary was provided in vague terms of description without more

specific functional terms"; and (3) the marked limitations were inconsistent with

Plaintiff's normal mental status evaluation findings.  Tr. 26.

1    In February 2016, Brooke Sjostrom, MS, LMHC examined Plaintiff and

2    opined that he had marked limitations in his ability to perform activities within a

3    schedule, maintain regular attendance, and be punctual within customary

4    tolerances without special supervision, and complete a normal work day and work

5    week without interruptions from psychologically based symptoms.  Tr. 299-307.

6    She also opined that Plaintiff had moderate limitations in his ability to understand,

7    remember, and persist in tasks by following detailed instructions; perform routine

8    tasks without special supervision, adapt to changes in a routine work setting; make

9    simple work-related decisions; communicate and perform effectively in a work

10   setting; maintain appropriate behavior in a work setting; and set realistic goals and

11   plan independently.  Tr. 302.  This opinion was co-signed by Dr. Genthe.  Tr. 304.

12   The ALJ gave little weight to this opinion because (1) there was no explanation

13   regarding her "checked box" ratings; and (2) the marked ratings were inconsistent

14   with the results of Ms. Sjostrem's mental status evaluation, which was mostly

15   normal.  Tr. 26.

16   Plaintiff's entire argument on this issue is comprised of a single paragraph

17   that generally argues that "[n]one of the restrictions" opined by these examining

18   mental health providers "are even discussed by the [ALJ]."  And because the

19   opinions are "consistent in agreeing that there is moderate, if not marked

20   limitations in [] three realms of function," there "has to be some inclusion of this

21   matter in the hypothetical presented to the vocational expert."  ECF No. 11 at 19.

ORDER ~ 28

The consistency of a medical opinion within the record as a whole is a relevant factor in evaluating that medical opinion. *Orn*, 495 F.3d at 631. However, as noted by Defendant, Plaintiff "failed to argue actual error with the ALJ's analysis" and "does not make any specific argument with regard to any particular opinion or finding." ECF No. 12 at 14-15. The Court may decline to address issues not raised with specificity in Plaintiff's opening brief. *See Carmickle*, 533 F.3d at 1161 n.2; *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

Despite Plaintiff's waiver, the Court notes that the ALJ specifically considered relevant factors in evaluating these medical opinions, including the inconsistency between the severity of the assessed limitations and the largely normal mental status evaluation results; and the providers' failure to adequately explain the assessed limitations. *See Lingenfelter*, 504 F.3d at 1042 (relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings); *Bayliss*, 427 F.3d at 1216 (a physician's opinion may be rejected if it is contradicted by that physician's own

treatment notes).  Here, as noted by the ALJ, the marked limitations opined by these examining providers were inconsistent with the almost entirely normal results of their mental status examinations.  *See* Tr. 212, 269-70, 304-305. Moreover, the ALJ properly rejected Dr. Genthe's 2014 opinion because he opined that Plaintiff would be impaired for only six months with available treatment.  Tr. 268.  To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).

Thus, regardless of evidence that could be favorable to Plaintiff, it was reasonable for the ALJ to find the normal mental status examinations did not support the severe limitations opined by the examining providers, their assessments lacked the requisite explanation, and Dr. Genthe's 2014 opinion did not meet the duration requirement for a finding of disability.  *See Burch*, 400 F.3d at 679. These were specific, legitimate, and unchallenged reasons for the ALJ to discount Dr. Arnold, Dr. Genthe, and Ms. Sjostrem's opinions.

**D. Step Five**

Finally, Plaintiff argues the "ALJ's RFC did not include all of the Plaintiff's limitations"; and therefore, the ALJ erred at step five by posing an incomplete hypothetical to the vocational expert. ECF No. 11 at 18.  Plaintiff is correct that

"[i]f an ALJ's hypothetical does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir.2009) (citation and quotation marks omitted). However, as discussed in detail above, the ALJ's rejection of the medical opinions, and Plaintiff's subjective testimony, was supported by the record and free of legal error. The hypothetical proposed to the vocational expert contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record. The ALJ did not err at step five.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ did not err at step two, provided clear and convincing reasons to discount Plaintiff's symptom claims, properly weighed the medical opinion evidence, and did not err at step five. After review the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 11, is **DENIED**.

ORDER ~ 31

2.  Defendant's Motion for Summary Judgment, ECF No. 12, is

**GRANTED**.

The District Court Clerk is directed to enter this Order and provide copies to

counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** April 7, 2021.


_____s/ Robert H. Whaley_____
ROBERT H. WHALEY
Senior United States District Judge